UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
No. 20-CR-270 (ECT/LIB)

---

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                              **DEFENDANT'S POSITION REGARDING SENTENCING**

ANDREW CHARLES WELSH,

    Defendant.

---

## INTRODUCTION

In 2016, Mr. Welsh was very excited about his life. He had just bought a bar in St. Cloud (PSR ¶ 7) and hoped to work there for many years. He was deeply in love with his wife, his high-school sweetheart, who he married fifteen years prior (PSR ¶ 51). Together they were strong parents to their two children, A.W. and G.W. (respectively about 12 and 10 years old in 2016) (PSR ¶ 51). The family lived on a hobby farm in a two-bedroom home with an unfinished basement (PSR ¶ 54). Mr. Welsh, too, was close to other members of his family, including his sister Jodi (who helps special needs children) and his brother Robbi (who owns clothing businesses) (PSR ¶ 48). The prospect of legal trouble was unimaginable. Mr. Welsh's life was not perfect. But it was good.

Just a couple of years later, Mr. Welsh perceived his life falling apart. His marriage was strained while his wife was having serious mental health issues and seeking treatment for depression/anxiety (PSR ¶ 51). Mr. Welsh did not understand the issues his wife was facing and the two first argued, then tried to fix their issues during marriage

1

counseling, then they divorced (PSR ¶ 51). This crushed him. The family's financial picture had also turned bleak—as the PSR notes:

> The financial investigation revealed the defendant owed approximately $545,000 on the contracts related to the purchase of Press Bar and was projected to owe over $467,000 at the time the full and final payments were due in April 2020. The financial investigation and divorce decree also confirmed the defendant and Jessie Welsh had substantial debts beyond the money owed on the bar.

(PSR ¶ 17.)

As part of the divorce decree, he and his wife agreed to sell the Press Bar (PSR ¶ 17). This, in itself, was extraordinarily difficult as he could not seek solace in his work while his family life was crumbling. It was made more difficult, then, by the valuations of the Press Bar that he received from the real estate professionals he contacted (PSR ¶ 17), which he believed were far too low. These personal and professional stresses mounted. He began drinking daily—enough to get buzzed—to "cope with the stressors of life" (PSR ¶ 59). He began drinking alone and keeping from others how frequently he drank (PSR ¶ 59). He was eventually diagnosed with anxiety and prescribed an SSRI (PSR ¶ 57). It was with this background that Mr. Welsh saw what he wrongly perceived to be a way out: he committed this offense.

He has pled guilty and is before this Court for sentencing. He respectfully requests this Court sentence him to **60 months imprisonment**—the statutory mandatory minimum and a within-guidelines sentence. As explained below, such a sentence would be appropriate in relation to other arson cases in the District and the country and would accurately reflect both his circumstances and the offense.

## **LEGAL FRAMEWORK**

The law on sentencing is well-settled. *United States v. Rivera*, 439 F.3d 446, 447 (8th Cir. 2006); *United States v. Haack*, 403 F.3d 997, 1002-03 (8th Cir. 2005). At sentencing, the Court is to first rule on any material, unresolved factual and legal disputes. FED. R. CRIM. P. 32(i)(3)(B). The Court is then to determine the statutory minimum and maximum sentences, calculate the advisory guidelines range, and determine whether any departures or variances from that range are appropriate.

While the guidelines "provide a starting point or 'anchor' for judges," *United States v. Kladek*, 651 F. Supp. 2d 992 (D. Minn. 2009) (quoting *United States v. Turner*, 548 F.3d 1094 (D.C. Cir. 2008)), the Court's ultimate task is to craft a sentence "sufficient but not greater than necessary" to achieve the statutory sentencing aims articulated in 18 U.S.C. § 3553(a). Put another way, the Court is to impose the least severe sentence that will achieve the statutory goals.

Here, there are no unresolved factual or legal objections to the PSR (PSR p. A.1). The parties and the PSR all agree on the relevant facts and law: the offense of conviction carries a mandatory minimum sentence of 5 years and a statutory maximum of 20 years (PSR ¶ 79). Mr. Welsh's criminal history category is I (with 0 criminal history points) and his offense level is 25 (PSR ¶¶ 43, 80). The advisory guidelines range under these parameters *would be* 57–71 months' imprisonment but, due to the mandatory minimum, the advisory guidelines range becomes 60–71 months' imprisonment (PSR ¶ 80).

**ARGUMENT**

Mr. Welsh respectfully submits that a sentence of 60 months' imprisonment is sufficient but not greater than necessary to achieve the statutory goals of sentencing articulated in 18 U.S.C. § 3553(a)—and submits a longer sentence (even if it is still within the guidelines) would be excessive. "The need to avoid unwarranted sentence disparities," the "nature and circumstances of the offense," and "the history and characteristics of the defendant" all justify a 60-month sentence.

*1) A 60-month sentence would avoid unwarranted sentencing disparities*

The Honorable Judge Michael J. Davis recently—in a sentencing in an unrelated matter—gave an overview of sentences in a number of arson cases in the District of Minnesota (note that they were largely related to the George Floyd protests).[1] Among the cases discussed were:

- Montez Lee who was charged with arson of a pawn shop in the wake of the rioting after George Floyd's death, and a dead body was found in the building. He was in criminal history category IV and received a 120-month sentence. (20-cr-168-WMW-ECW).

- Matthew Rupert, convicted of arson from burning down a Sprint store, who had a criminal history category of VI and received a 105-month sentence. (20-cr-104-NEB-TNL).

- Alexander Heil, who was convicted of conspiracy to commit arson at a Wells Fargo bank, was sentenced by this Court to a 30-month sentence. (20-cr-179-ECT) [Marc Bell Gonzales, his co-defendant, was sentenced by this Court to a 37-month sentence. (20-cr-180-ECT)].

---

[1] *United States v. Solomon*, 20-cr-00193-MJD-ECW, ECF No. 110, Transcript of Sentencing Hearing Held on 3/10/2022, pp. 21 *et. seq.*

- Matthew White, who burned down the Enterprise Rent-a-Car business in St. Paul. He was in criminal history category VI and received a 72-month sentence (20-cr-173-WMW).

- McKenzy Dunn, who was convicted of conspiracy to commit arson for starting a fire in a St. Paul health and nutrition store, was in criminal history category 1 and received a downward departure under U.S.S.G. § 5K2.20 (aberrant behavior). She received a sentence of 3 years' probation. (20-cr-129-NEB-HB).

- Samuel Frey, Ms. Dunn's codefendant, who received a 27-month sentence. (*Id*.).

- Garrett Ziegler, who was charged with aiding and abetting arson against the Dakota County Government Center in Apple Valley. He was in criminal history category I and received a 60-month sentence, which was the statutory mandatory minimum. (20-cr-188-SRN).

- Fornandous Henderson—Mr. Ziegler's codefendant—who was in criminal history category V and received a 78-month sentence. (20-cr-146-SRN).

- Dylan Robinson, Branden Wolff, Davon Turner, and Bryce Williams, who were convicted of conspiracy to commit arson against the Minneapolis Police Department's Third Precinct building, and received sentences of 48, 41, 36, and 27 months' imprisonment, respectively. (20-cr-181-PJS-BRT).

Additional cases inside and outside the district show that a 60-month sentence would be appropriate. For a few examples:

- In 2014, Ryan Scharber was sentenced by Chief Judge Tunheim to a 60-month mandatory minimum sentence when he—while as chief of the Babbitt (Minnesota) Volunteer Fire Department—"admitted to setting nine fires on federal and state forest land, and an attempted arson at the Birch Lake Resort." On his appeal, the Eighth Circuit affirmed the 60-month sentence. *See United States v. Scharber*, 772 F.3d 1147 (8th Cir. 2014).

- In 2016, Benjamin Cunha was sentenced in the Eastern District of California. He—while employed as a firefighter—set at least 30 fires for the purposes of overcoming boredom, earning overtime pay, and impressing his peers. He received a 60-month mandatory minimum sentence. 13-cr-321 (JAM) (E.D. Cal.). *See* DEPARTMENT OF JUSTICE, *Former Firefighter Sentenced to Five Years in Prison for Wildland Arson Fire on Federal Land*, Feb. 23, 2016 (available at https://www.justice.gov/usao-edca/pr/former-firefighter-sentenced-five-years-

- prison-wildland-arson-fire-federal-land).

- In 2018, Bennie Davis was sentenced in the Eastern District of Kentucky. After he was fired from a Qdoba restaurant, he broke into the store when it was closed, stole cash from the safe, and started a fire in the restaurant. *See* DEPARTMENT OF JUSTICE, *Lexington Man Sentenced to 60 Months for Arson of Qdoba Restaurant*, Jan. 29, 2018 (available at https://www.justice.gov/usao-edky/pr/lexington-man-sentenced-60-months-arson-qdoba-restaurant).

- In 2019, Darrel Rich was sentenced in the District of Idaho. He doused four police cruisers with gasoline when they were parked outside the police station, then lit them on fire. He received a 60-month sentence. *See* DEPARTMENT OF JUSTICE, *Arsonist Sentenced to 60 Months in Prison for Burning Four Emmett Police Cars*, Jun. 6, 2019 (available at https://www.justice.gov/usao-id/pr/arsonist-sentenced-60-months-prison-burning-four-emmett-police-cars).

- In 2021, Luis Fernando Bueso Romero was sentenced in the District of Utah. He poured gasoline on his ex-girlfriend's apartment building and lit it on fire after she broke up with him, causing several residents to flee. He received a 60-month sentence. *See* DEPARTMENT OF JUSTICE, *Midvale Man Sentenced for Arson of West Valley City Apartment Building*, Nov. 1, 2021 (available at https://www.atf.gov/news/pr/midvale-man-sentenced-arson-west-valley-city-apartment-building).

Other examples abound. These cases support the proposition that a 60-month sentence is appropriate. A sentence exceeding 60 months would instead create unwarranted disparities where Mr. Welsh receives a harsher sentence than other more culpable individuals with worse criminal history.

2) *A 60-month sentence would show proper consideration as to the nature and circumstances of the offense*

The defense does not deny that arson is a serious offense. It presents certain, intended property damage along with the potential of (depending upon the circumstances of the arson) risk of personal injury. However, this consideration does *not* warrant a greater-than-sixty-month sentence for two reasons.

First, any possible danger was already taken into account by the sentencing framework, including the statutory mandatory minimum of five years, as well as the stipulated two-level enhancement under U.S.S.G. § 2B1.1(b)(16)(A) for an offense involving "conscious or reckless risk of death or serious bodily injury."

Second, *this* arson, unlike some others, was conducted in a way so as to lessen risks to others by (notably) being conducted at night in a building after steps were taken to make sure no one was present in the building. In many structural arsons, including some discussed above, fires are set despite—or perhaps because of—the presence of others in the building.

### 3) *A 60-month sentence would show proper consideration as to the history and characteristics of Mr. Welsh*

The history and characteristics of Mr. Welsh, too, support a 60-month sentence. Mr. Welsh is not a typical federal offender in any way. He is a 42-year-old man (PSR p. F.2) who, prior to the offense, had never spent a day in jail and never been convicted of anything beyond a petty misdemeanor (PSR ¶¶ 36–42). His life was remarkably stable: he was born in St. Cloud and lived there with his family, then lived with his father when his parents divorced (PSR ¶ 47). He graduated from high school and began working (PSR ¶¶ 63, 66–69). He married his high school sweetheart and they had two well-adjusted children (PSR ¶ 51). While (as discussed above) Mr. Welsh's life did go off track, this Court can see from his history and characteristics that he has a clear path to returning to being a happy, well-adjusted, law-abiding member of society.

Not only can this Court see *qualitatively* that Mr. Welsh brings a low risk of recidivism, the defense submits that quantitative, evidence-based data from the United States Sentencing Commission corroborates these intangibles. In March 2016, the Commission published a 61-page report titled *Recidivism Among Federal Offenders: A Comprehensive Overview* in which it examined over 25,000 convicted federal offenders to determine which factors would make a person more or less likely to reoffend. Mr. Welsh's status as a relatively older person with no criminal history bodes well for his future according to the Commission.

The Commission's published Conclusion notes:

> The Commission found that, consistent with existing research, two factors – offenders' criminal histories and their ages at the time of release into the community – were most closely associated with differences in recidivism rates. Younger offenders recidivated at significantly higher rates than older offenders, and offenders with more extensive criminal histories recidivated at significantly higher rates than offenders with lesser criminal histories.

*Recidivism Among Federal Offenders: A Comprehensive Overview*, UNITED STATES SENTENCING COMMISSION, Mar. 2016 at 27 (available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2016/recidivism_overview.pdf).

The supporting data corroborates this. For offenders with zero criminal history points, like Mr. Welsh, the rate of recidivism was 30.2%, while offenders with more than ten criminal history points were in the highest category, with an 81.5% rate of recidivism. *Id*. at 18. There is a close relationship between the populations' criminal history points and the aggregate risk of recidivism. *Id*. Interestingly, while both zero-point and one-point offenders are grouped into Criminal History Category I; one-point offenders have a 46.9% rate of recidivism – markedly higher than zero-point offenders like Mr. Welsh. *Id*.

Accordingly, even though the guidelines correctly place Mr. Welsh in the lowest Criminal History Category; *even that category* may quantifiably overstate his risk of recidivism.

As to age, the Commission affirms that "Studies have repeatedly shown that older offenders at sentencing are at lower risk for reoffending, and the Commission's research confirms these findings." *Id.* at 23. The data shows that defendants younger than 21 when sentenced had a high rate of recidivism—71.1 percent—while defendants in the 41-to-50-years category, like Mr. Welsh, reoffended much more rarely at 35.9%. *Id*. at 23.

Notably, the Commission data showed that, setting aside sentences of less than 6 months, there was little if any relationship between *the length of sentence imposed* and *the rate of recidivism*. *Id.* at 22. It found that defendants' recidivism rates fell between 50 and 56 percent regardless of whether their sentence was as low as "6 to 11 months" or as high as "10 years or more." This shows that issuing a sentence of *longer than 60 months* would not provide a statistical recidivism-related benefit, as it is other factors that drive recidivism-especially the other personal and statistical factors discussed above that bode well for Mr. Welsh.

## CONCLUSION

If Mr. Welsh is sentenced to the statutory minimum sentence, justice will have been done. He will have suffered greatly from his actions, facing numerous harsh outcomes, including: a nearly two-year federal criminal case, a great deal of publicity and news stories outlining his crime, an associated prosecution in state court, a restitution

9

order that could be over $3,000,000.00, a sentence of five years' imprisonment, and a term of post-imprisonment supervised release.

This set of consequences would provide a substantial deterrent to other would-be offenders, accurately reflect the seriousness of the offense, provide a fair punishment, and satisfy the other sentencing considerations referenced above.

Respectfully submitted,

**BIRRELL LAW FIRM, PLLC**

Dated: September 6, 2022

*/s/ Ian S. Birrell*
Andrew S. Birrell (Attorney No. 133760)
Ian S. Birrell (Attorney No. 0396379)
Attorneys for Defendant
333 South 7th Street, Suite 3020
Minneapolis, MN 55402
Phone: (612) 238-1939
andy@birrell.law | ian@birrell.law

**RYAN GARRY, ATTORNEY, LLC**
Ryan P. Garry (Attorney No. 0336129)
Attorneys for Defendant
333 South Seventh Street, Suite 3020
Minneapolis, MN 55402
Phone: (612) 436-3051
Fax: (612) 436-3052
ryan@ryangarry.com